**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SHIVA STEIN,<br><br>Plaintiff,<br><br>v.<br><br>IEC ELECTRONICS CORP., KEITH M. BUTLER, CHARLES P. HADEED, ANDREW M. LAURENCE, JEREMY R. NOWAK, and JEFFREY T. SCHLARBAUM,<br><br>Defendants. | : | Case No. _______________<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against IEC Electronics Corp. ("IEC or the "Company") and the members of IEC's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of IEC by affiliates of Creation Technologies International, Inc. ("Creation Technologies").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on August 26, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation

Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby the Company will merge with CTI Acquisition Corp., a wholly owned subsidiary of Creation Technologies, and the Company will become a wholly owned subsidiary of Creation Technologies (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated August 12, 2021 (the "Merger Agreement"), each IEC common share issued and outstanding will be converted into the right to receive $15.35 per share in cash (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer to acquire all of IEC's outstanding common stock and will expire on September 23, 2021.

3. Defendants have now asked IEC's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) IEC's financial projections relied upon by the Company's financial advisor, B. Riley Securities, Inc. ("B. Riley") in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisors. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as IEC stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to IEC's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendant IEC is incorporated in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of IEC common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Keith M. Butler has served as a member of the Board since 2015.

11. Individual Defendant Charles P. Hadeed has served as a member of the Board since 2015 and is the Chairman of the Board.

12. Individual Defendant Andrew M. Laurence has served as a member of the Board since 2015.

13. Individual Defendant Jeremy R. Nowak has served as a member of the Board and since 2015.

14. Individual Defendant Jeffrey T. Schlarbaum has served as a member of the Board and since 2015 and is the Company's President and Chief Executive Officer.

15. Defendant IEC is incorporated in Delaware and maintains its principal offices at 105 Norton Street, Newark, New York 14513. The Company's common stock trades on the NASDAQ Exchange under the symbol "IEC."

16. The defendants identified in paragraphs 10-14 are collectively referred to as the "Individual Defendants" or the "Board."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

18. IEC, together with its subsidiaries, provides electronic manufacturing services in the United States. It specializes in delivering technical solutions for the custom manufacturing, product configuration, and verification testing of engineered complex products that require a level of manufacturing. The Company manufactures a range of assemblies that are incorporated into various products, such as aerospace and defense systems, medical devices, industrial equipment, and transportation products. It serves medical, industrial, aerospace, and defense sectors through a direct sales force, as well as through a network of manufacturer's representatives. The Company was founded in 1966 and is headquartered in Newark, New York.

19. On August 12, 2021, the Company announced the Proposed Transaction:

> NEWARK, N.Y. and BOSTON, Aug. 12, 2021 (GLOBE NEWSWIRE) -- IEC Electronics Corp. (NASDAQ: IEC) ("IEC") and Creation Technologies Inc. ("Creation") today jointly

announced the signing of a definitive merger agreement under which Creation will acquire all outstanding shares of IEC for $15.35 per share in cash, representing a fully diluted equity value of approximately $173.8 million and an aggregate enterprise value of $242.3 million, based upon net debt of $68.6 million. The transaction has been unanimously approved by the Boards of Directors of both companies.

IEC is a leading provider of high-complexity, low-to-medium volume electronic manufacturing services focused on high-reliability applications within the aerospace and defense, medical and industrial end markets. With its marquee, blue-chip customer base, the company has proven its ability to service the industry's highest levels of quality and reliability. The merger will augment IEC's existing production capabilities with access to Creation's existing low-cost manufacturing facilities in Mexico.

Creation Technologies is a global EMS supplier with a focus on medium volume, high-reliability customers in aerospace and defense, medical and tech industrial markets. Creation and IEC combined will have more than 4,000 employees in facilities located in the USA, Canada, Mexico and China.

"IEC is excited about joining the Creation family. The transaction presents our stakeholders with immediate value while providing our customers a broader platform for continued growth," said Jeffrey T. Schlarbaum, President and CEO of IEC.

"A combination of IEC and Creation creates a leading medium volume, high-reliability electronics manufacturer with a customer service driven culture," said Stephen P. DeFalco, Chairman and CEO of Creation. "Furthermore, IEC and Creation's complementary geographic footprints create a premier full-service North American supply chain for both companies' customers."

**Transaction Details**

Under the terms of the merger agreement, Creation will commence a tender offer to acquire all of the outstanding common stock of IEC for $15.35 per share in cash. The purchase price represents a premium of approximately 47% to IEC's closing share price on August 11, 2021, the last full trading day before today's announcement. The tender offer is subject to customary closing conditions, including the tender of at least two-thirds of the total number of IEC's outstanding shares and the expiration of the applicable waiting period under the Hart-Scott-Rodino Antitrust

> Improvements Act of 1976. Following the closing of the tender offer, a wholly-owned subsidiary of Creation will merge with and into IEC, with each share of IEC common stock that has not been tendered being converted into the right to receive the same $15.35 per share in cash offered in the tender offer. The transaction will be financed through a committed debt financing package provided by JPMorgan Chase Bank and Citizens Bank. The transaction is expected to close by early October 2021.
>
> The merger agreement provides for a "go-shop" period, during which IEC (acting through its financial advisor) will actively initiate, solicit, facilitate, encourage and evaluate alternative acquisition proposals, and potentially enter into negotiations with any parties that offer alternative acquisition proposals. The "go-shop" period is 35 days subsequent to signing of the Merger Agreement, ending September 16, 2021. There can be no assurance that this "go-shop" process will result in a superior proposal. IEC does not intend to disclose developments with respect to the solicitation process unless and until its Board of Directors has made a decision with respect to any potential superior proposal.
>
> Upon completion of the transaction, IEC will become a privately-held company and shares of IEC's common stock will no longer be listed on any public market.
>
> **Advisors**
>
> B. Riley Securities, Inc. is serving as exclusive financial advisor to IEC and Harter Secrest & Emery LLP is serving as legal counsel to IEC. Moelis & Company LLC is serving as exclusive financial advisor to Creation and Choate, Hall & Stewart LLP is serving as legal counsel to Creation.

* * *

20. It is therefore imperative that IEC's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B. <u>The Materially Incomplete and Misleading Solicitation Statement</u>**

21. On August 26, 2021, IEC filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the

Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

22. The Solicitation Statement omits material information regarding the Company's financial projections and the valuation analyses performed by B. Riley, the disclosure of which is material because it provides stockholders with a basis to project the future financial performance of the target company, and allows stockholders to better understand the analyses performed by the financial advisor in support of its fairness opinion of the transaction.

*Omissions and/or Material Misrepresentations Concerning IEC Financial Projections*

23. The Solicitation Statement fails to provide material information concerning financial projections by IEC management and relied upon by the Company's financial advisor in its analyses. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisor with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that IEC management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors

can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24. For the Projections prepared by Company management for IEC for fiscal years 2020 through 2024, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metric: Adjusted EBITDA but fails to disclose: (i) the line items used to calculate the non-GAAP measure; and (ii) a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G.

25. When a company discloses non-GAAP financial measures in a solicitation statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

26. The SEC has noted that:

> Companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

> non-discretionary expenditures that are not deducted from the measure.[1]

27. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning B. Riley' Financial Analyses*

28. With respect to B. Riley's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the terminal values of the Company; (ii) the basis for applying a range of terminal value multiples of 8.0x to 10.0x; and (iii) the basis for applying the discount rates ranging from 13.0% to 15.0%.

29. With respect to B. Riley's *Premiums-Paid Analysis*, the Solicitation Statement fails to disclose: (i) the stock price premiums observed; and (ii) the transactions selected.

30. With respect to B. Riley's engagement as the financial advisor to the Special Committee, the Solicitation Statement fails to disclose whether B. Riley performed any financial, brokerage, or investment banking services to the Company or Creation Technologies and their affiliates in the prior two years to the Merger Agreement and the compensation B. Riley received from any of the parties, if any.

31. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer,

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

Plaintiff will be unable to make a fully-informed decision regarding whether to tender her shares, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of Section 14(e) of the Exchange Act

32. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

34. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

35. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisors' valuation analyses and resultant fairness opinion.

36. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

37. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek other remedies. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

38. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

39. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT II**
**Violations of Section 14(d)(4) of the Exchange Act and**
**Rule 14d-9 Promulgated Thereunder**
**(Against All Defendants)**

40. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

41. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

42. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

43. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

44. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

45. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of IEC within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of IEC, and participation in and/or awareness of the Company's operations and/or intimate

knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of IEC, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of IEC, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

50. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: August 30, 2021

**RIGRODSKY LAW P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert W. Mondros (#3308)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com
Email: hwm@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**MELWANI & CHAN LLP**
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, New York 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com